Let's wait and let everyone get settled. Okay, Mr. Wray. Good morning, Your Honors, and may it please the Court. My name is Ryan Wray, and I represent retired Staff Sergeant First Class Jose Luis Hernandez, Jr. This interlocutor to your appeal presents three narrow questions of law. Whether the district court had authority to grant this court's judgment or relief from this court's judgment, whether Hernandez violated his discovery obligations by providing opposing counsel with an authorization to obtain his medical records rather than the records themselves, and whether any alleged discovery violation deprived the defendant of its opportunity to fully and fairly present its case given that it failed to use the authorization to obtain the medical records that it now contends were important to its defense. The jurisdictional issue is straightforward and fully briefed. Unless the Court has questions about the issue, I would like to focus on the limited time here on the remaining two issues. Yes, you don't waive anything that's in your briefs. That's fine. Whether providing an authorization for a lease of protected health information and identifying the relevant health care providers relieves the party of the burden of producing records controlled by the health care providers, and also whether the defendant was prevented from fully and fairly presenting its case, as contemplated by 60B3, when it had access to the pertinent medical records prior to the trial and could have obtained those documents by exercising greater diligence. As to the medical records, in early 2015, Results Council submitted written discovery requests to Hernandez requesting all civilian medical records from June 2013. In response, my office provided only documents in our possession, a one-page doctor's release note from the emergency room. We also objected to the production of any additional documents. Following this production, Results Council requested an executed release of protected medical information from Hernandez, which we willingly provided. You provided the authorization but not the records. Yes, Your Honor. Why didn't you just give him the records? We did not have the records in our possession. You didn't have any records saying it was a headache? We didn't have any. Your Honor, all we had at the time was what we provided. From the emergency room? I'm sorry? The document from the emergency room. Yes, Your Honor. And in the interim, before the release was provided, on March 2nd, one of the defendants' trial counsel emailed me directly and said, in part, medical release, thank you. We need to get that so we can obtain the records. This is because Results Council knew that the one-page doctor's note that had been provided did not constitute the full set of medical records and plainly expressed an interest to obtain the records with the aid of the release. That email can be found in Record of Appeal, page 1271. Sometime later, my office requested the medical records in question and picked them up on or about May 13th, 2015, approximately two weeks before trial. I believe my office attempted to fax the documents to opposing counsel as a courtesy, but the fax failed to send. And the reason I say I believe is because this issue came up two years after the date in question. And from my review, we found a failed fax send from two days after that date to the trial counsel. That's the best information that I have. Nevertheless, opposing counsel was well aware of the location of the medical records in question, and having been provided with the medical release, they prepared and requested. Hernandez met his obligation pursuant to Rule 34. He satisfied his discovery obligations by giving the defendant just as much access to those records as Hernandez had. Both the trial court and Results seemingly have taken the position that in order to comply with Rule 34, a party must provide physical copies of documents in question to the requesting party. Rule 34 does not require a party to provide copies of documents. The rule permits the requesting party to inspect, copy, test, or sample the requested documents or things. Providing an authorization to obtain copies of medical records is the routine way in which lawyers comply with Rule 34, with a Rule 34 request, and no circuit court precedent requires lawyers to do anything more. In Jackson v. United Artists Theaters from the District of Nevada in 2011, the trial court took a very similar situation and came to a drastically different result. Where a party has provided a medical release in lieu of providing physical copies of records, the court found nothing in these rules prohibits a plaintiff from voluntarily providing and a defendant from accepting a signed medical authorization so that the defendant can obtain the plaintiff's medical records and bills directly from the providers. The court goes on to say a defendant may prefer this method to make sure that it obtains complete medical records. Importantly, results mischaracterizes this ruling in their brief. The case is almost identical in that the plaintiff did not have the records when the discovery request was made, provided a medical records authorization, later received some records, and did not supplement them. The court still found that the plaintiff had met their discovery obligations by tendering the medical release. The records were not in Hernandez's possession at the time of the discovery request, the initial responses, or when the medical release was provided. After providing the release, Hernandez was provided access to the documents in question and had no duty to supplement the discovery. The district's court conclusion to the contrary is unsupported by the text of Rule 34 and is erroneous as a matter of law. As to the third issue, regardless of how the district court viewed Hernandez's compliance with the discovery obligations, it was error to grant the Rule 60b-3 motion when the opposing party could have discovered the information in the medical records with a more focused effort. Are you reading from your brief or from a summary? A summary, Your Honor. While the Fifth Circuit has not yet considered the precise issues presented here on appeal, the First Circuit has ruled that a party may not prevail on a Rule 60b-3 motion when it has access to the disputed information. And in Diaz v. Methodist Hospital, this court in 1995 found that when a party has access to information, and likely could have uncovered the evidence prior to trial with a more focused effort, the opposing party's actions cannot be said to have foreclosed the possibility that the party could have fully and fairly presented its case. The court further distinguishes this case from Rozier, the case that results most heavily relies on, because Rozier concerned information that was within the exclusive purview of the wrongdoer, which makes Rozier completely factually distinct from the case at bar. It is undisputed that the defendant had access to the requested medical records when, with a more focused or diligent effort, could have obtained the records before trial. Its failure to do so forecloses any claim that it was deprived an opportunity to fully and fairly present its case by the alleged discovery violation. In open court, the trial court judge stated, the defendant could have gotten the records, and I can assure you 90% of lawyers would have gotten the records. The judge was correct, but whether or not most lawyers would have used the release, the fact that the defendant could easily have used it demonstrates the defendant had full and fair opportunity to obtain the discovery it now says was required to present to defense. And you had the records before trial? Again, on May 13th, Your Honor, yes. Before trial? Yes, Your Honor. All right, but yet you argued he went to the emergency room because of a backache when, in fact, the records reflected it was a headache? The records reflected he went for back pain and a headache. So it did, in fact, reflect that he went for both back pain and a headache. Yes, Your Honor. The factual issues, we take great issue with the trial court's findings. The records, I believe, clearly indicate that my client was treated for back pain, as he claimed. But factual issues are not something that we can contest at this time. It would have to be done at another trial. It should also be noted that the trial court seems to take a position different from that advocated by results here. In their brief, results admits that Harry Hernandez produced such documents in his possession, custody, and control at the time that the discovery was responded to on Apelli's brief, page 6, seemingly accepting the Clark v. Vega wholesale line of reasoning that the party has no control over medical records held by a third party. However, the trial court premises this argument here on the notion that I deceived opposing counsel, personally, into complacency when, in the court's words, he, without qualification, produced the letter from the emergency room physician as being the record in his client's care, custody, and control, related to plaintiff's July 15th emergency room visit, on page 39 of the order. It should have been clear, from my objection, that I was only producing records in my possession on the assumption that I had no duty to order records at my own expense that I had not obtained. My response was not misleading, and I cooperated fully when I was asked to obtain my client's signature on a release for any records that were not in my possession. Further, it's clear from the grounds of relief sought by results under 60B-6 are identical to the grounds sought under 60B-3. While the court did not provide relief under 60B-3, it made it clear that it, under, excuse me, under 60B-6, it did make it clear that it thought that relief should be granted in the alternative to 60B-3. Courts have held repeatedly that a party cannot simply use 60B-6 to assert a claim that could properly be brought under another provision. In Helsing v. CSX Transportation, this circuit, or court in 2005, held that the reason for relief set forth under 60B-6 cannot be the reason for relief sought under another section of 60B. The court order, therefore, should be reversed, and the matter remanded for the damages determination that this court ordered on the first appeal. Okay. Thank you, Mr. Wright, and you've saved time for rebuttal. Thank you. Ron? Good morning. May it please the court, this case involves what the district judge called one of the two worst cases of discovery misconduct that he has seen in his many years on the federal bench. The district court found that the plaintiff, Mr. Hernandez, gave, quote, intentionally false testimony regarding the nature and extent of the injuries on which his claims were based, and that his attorney failed to produce documents that would have revealed this deception prior to trial, despite pending discovery requests seeking those documents. So was he incorrect this morning when he said that the document for the emergency room showed back pain and headache? Well, what he said was misleading, I would say. The document for the emergency room showed that his chief complaint, there was a headache frontal, that it was onset that same day at home, all of which is contrary to his previous testimony. It said he had an associated secondary symptom of back pain, which was, quote, same as previous, and Mr. Hernandez had testified that he dealt with ongoing back pain that he typically addressed with naproxen or medications of that kind, and he just pushed through and had learned to deal with it. The document from the hospital reflects exactly that type of back pain, a kind of secondary back pain treated with medicine, but it says the reason he went, his primary complaint, was actually a headache, and that, in fact, he'd been treated for migraines in the past. And that turned out to be another problem with his testimony because he then later afterwards changes his story twice about the migraine issue. Once the document from the hospital came to light, he first said, yes, I have migraines. Yeah, sometimes I get treated for migraines. And then he said two months later at the Rule 60 hearing, no, no, I haven't had migraines, I don't get migraines, which is what ultimately led the district judge in this case to say, I find that this plaintiff would say whatever he needs to say that would be convenient for his case. Your Honor, the important thing to note here... Lots of parties do that. Since it was so central to the case, it seems like this hospital visit was really the whole case. Why didn't you use the authorization? I mean, even if you weren't, even if that doesn't support these arguments the other side's making, it sure would have saved a lot of time and expense. Sure, Your Honor. In hindsight, knowing now, certainly, it would have been great to have had the records,  that they had gone back and gotten them. But why is it even hindsight? I mean, at the time, you know what happened to him, why he went to the hospital. Isn't that really the issue? Well, trial counsel for results, Carrie Hoffman, testified in front of the court at the Rule 60 hearing. And when asked about that issue, what she said was his conduct in discovery led me to believe that he was actually producing the records because he had made an initial production of records. He actually produced six exhibits of medical records initially. There were two different requests, asking for medical records, Request 12 and Request 19. He produced a total of six exhibits in response to those. He then later supplemented. He produced 19 additional exhibits, some of which related to Request 19. So she was led to believe, for whatever reason, she took the position that he was producing these things and it wouldn't be necessary to use the authorization at that time. Isn't there also an ongoing duty to produce? There certainly is an ongoing duty to produce. Rule 26 requires supplementation. And what the counsel for the opposing party seems to have done is he started producing his documents and then upon being contacted by the other side, asked if he would be willing to do the authorization. He let himself off the hook and said, well, okay, I guess from now on I don't really have to do anything. So when later he obtained documents showing that his client wasn't telling the truth, he didn't do anything with those documents. And, in fact, he went on to trial and his client continued to tell the same story he had been telling about his left leg being locked in position, he couldn't walk, and he had this really severe back injury and all of this. Well, that's not the story that's told by the medical record, which Mr. Ray had in his possession prior to the trial. But nonetheless, Mr. Hernandez continued to tell that same story. And really, in that regard, it's reminiscent of the Abramson case, which is cited in our pleadings. Abramson's important for a couple of reasons. First of all, in the Abramson case, Rule 60B relief was granted because the defendant there did not turn over a witness statement that the counsel knew about, and he won at trial. And then later the plaintiff found out about the witness statement, and the defendant's excuse was, well, you could have found the information somewhere else because the statement was made at the scene of the accident in question. You could have gone and deposed that person. You could have subpoenaed that information. You didn't have to get it from us. You could have gotten it from them. And the Sixth Circuit didn't have any of that. They said, no, it wasn't on them to do a more thorough investigation to uncover your deception. It was on you to not be deceptive. You knew about this. And nonetheless, you put your witness up, your client, to continue testifying to something that you had reason to believe was false. In fact, the trial court there actually raised the issue of suborning perjury and was concerned about that. The Sixth Circuit doesn't directly address that but mentions it. So Abramson, I think, is an important rejoinder to their argument that any time you can get something from someone else through a subpoena, then the other party is off the hook. That doesn't seem to be the case. That's not what Abramson instructs us. I also wanted to take a few moments to address the standard of review here just briefly. It is an abuse of discretion standard. There are many, many cases in this circuit that have held its abuse of discretion on Rule 60. The argument made by Mr. Hernandez is because we're here on interlocutory review, that that changes things, that that makes everything different, and now we have a different de novo standard because it's interlocutory. Well, first of all, there are a couple of cases in other circuits where Rule 60 has been reviewed on interlocutory review and they've used the abuse of discretion standard. The one I would point to is Raven v. Oppenheimer & Co., 74F3239. So the abuse of discretion standard, I think, is important to point out and clarify here. The case he cites to say that it's not abuse of discretion, actually in that serial case in the Eighth Circuit, the court says it's giving deference to the trial court on mixed questions of fact and law, and it ends up more or less in a roundabout way applying a very deferential abuse of discretion type standard even though it says that it's not going to do that. So that's on the standard of review. On the jurisdictional question, I agree that that's been briefed. We believe standard oil controls. There's a need to further discuss that issue with the remainder of my time. I did want to say a few things about fraud or misconduct, whether fraud or misconduct was committed here. It's important to remember, as I said, Mr. Hernandez consistently testified under oath that severe back pain was the cause of his medical visit on July 15th. When asked by his counsel at trial, and remember this is the time when the counsel knows about the headache issue, hasn't been raised. When asked by his counsel at trial what happened at the hospital, describe what happened on July 15th, he says, I had to tell them my brief history of my back injury, which doctor I was seeing, and what medication I was on. And that was his response. Nothing about the headache that was his chief complaint and how it came about, nothing about that at all. Page 855 in the record is the doctor's note that lays all that out about the headache. Page 853 in the same package of records talks about Ultram, which is a medication he was apparently taking at the time, which is a migraine medication. His doctor came and testified at the Rule 60 hearing that Ultram was a migraine medication. So apparently he was actually taking a migraine medication at the time. None of that came out. As I said, he changed the story about the migraines. He wasn't truthful about the events of the previous night. He said that he took a muscle relaxant the night before when he came off of service, but then later we know from page 855 he told the ER he was out of that medicine so he couldn't have taken it. The district court even noted that he lied about the doctor's note. He once said at trial, I asked him right away for a doctor's note as soon as I walked in the door, and then later in his second deposition he said, well, the nurse prompted me when I was leaving to see if I wanted to get the doctor's note. This is when the district court said I think he would say whatever it took to suit his purpose. Now, as to Mr. Ray, it would appear that Mr. Ray seems to be arguing for essentially a new rule of discovery, as I said, that he can produce some things, and if he then receives contact from the other side of that authorization, he's now off the hook to supplement. That's not how discovery works, and that shouldn't be how discovery works. As the court in Abramson said, gamesmanship and who can hide the ball more effectively is not the way our system works, and we don't want that to be the way the system works. When people have possession of a document prior to trial that shows that their client is not telling the truth, that needs to come out. That needs to be produced, particularly where he's produced things in the past and he's supplemented his production in the past, and the other side believes, I think reasonably, that he's going to produce documents. As far as the case law, the Anderson case warns against filing misleading or evasive responses in discovery. That was a Rule 60B case, Doe v. District of Columbia. I expect he should produce it if he has a copy. He clearly had copies of these things, didn't produce them. A couple of additional case notes. I've talked about the Abramson case on the fully and fairly standard, prevented from fully and fairly. There are a couple of ways courts have interpreted that. This court in the Dupuy orthopedics case just this year said, defendants need only show the alleged misrepresentations for closed, potentially promising cross-examination tactics. Well, that clearly happened here. No one knew to ask him about his headache, particularly in his earlier deposition, and so he wasn't asked about his headache. There was no cross-examination that happened until after the trial and the appeal. In Rozier, the court there noted that the plaintiff's attorney couldn't properly judge which arguments were strongest and which were not because he hadn't seen the withheld document, so he actually abandoned a theory before trial that would have probably been productive had he had that document in his possession. The Rozier court notes that that is a thing that can happen to a party that's been deprived and disadvantaged, and it's not on that party. It's on the other side that was deceptive in the first place. Here, the district court, in keeping with that, the district court said, Hernandez's repeated false assertions undoubtedly had an influence on the decision of trial counsel for plaintiff not to pursue further discovery concerning the July 15, 2013, emergency room visit and to take at face value the incomplete and misleading answer to defendant's discovery request on that subject. Results trial counsel then testified we definitely would have asked him about the headache had we known. And then a note about Diaz. They rely heavily on Diaz and say Diaz teaches us this principle that if you can find things somewhere else, then that's good enough. Diaz was a case that involved no fraud or misconduct issues and actually no discovery misconduct issues. Diaz was simply a case where one side had experts who testified at trial and the other side didn't. After the party with the experts won, the losing party went out and got an expert belatedly to submit an affidavit to contradict the experts who testified at trial. That was it. There was no evidence that the trial experts were wrong or that they had information showing they were wrong or that they withheld anything. It was just a belated affidavit was submitted, and the trial court said, I think understandably, this doesn't really indicate any kind of misconduct necessarily, and really all you've done is create a fact issue here, so we don't think this rises to the level of Rule 60B, and it was affirmed on views of discretion review by this court. It's very different, though, than the case we have before us right now where we have documents in the possession of a frozen counsel that show that the client was not telling the truth, and they went ahead with trial. No one saw the document. It wasn't mentioned at trial. Their client gave false testimony at trial, and that carried on before this court to the point where I was standing before a panel of this court and was asked specifically, is there anything in the record that would rebut his factual allegations about his back entry? And I said no. At the time, there wasn't. The district court hadn't found anything. Later we found out, well, that wasn't true. Not only was it not true, but at the time, counsel for Mr. Hernandez knew that that wasn't true when we were here in this court. He knew that that wasn't true. He had seen that document. He knew that at the time. So this carried on for a long time until it was accidentally revealed in the second deposition of Mr. Hernandez, which was taken pursuant to the remand for damages. And the only reason, he says, well, if counsel for result staffing now was able to get these documents, then that proves that the first counsel at trial probably messed up. They should have gotten them too because the second counsel was able to get them. But I want to point out that the reason that my firm, as the second counsel for result staffing, went to get those documents was not to check up on trial counsel or to try to go back and get original documents from the trial. It was to find out about damages. Because we were looking toward a damages trial. So the request that was sent, the subpoena that was sent to the hospital, was actually all documents from 2013 to the present, with the idea that what we would be getting was more recent than that, that would be follow-up visits that he'd made or additional procedures because we needed to gauge what his damages amount might be. And it was honestly a surprise to then receive all these documents from July 15, 2013, that were bearing directly on original issues in the trial. So this case is in a little bit of an unusual posture. If we should, I don't know how we're going to rule, but if we should decide to affirm Judge McBride's order, then what happens next? What's the posture of the case in the district court? Sure, Your Honor. It would be remanded to the district court. And at that point, there would need to be a trial on the issues relating to the convalescence provision of the statute because that was the issue on which this court held in favor of Mr. Hernandez and reversed the case. So that issue would have to be tried in the district court. And then depending on the outcome of that, damages might need to be tried also because the damages issue still remains outstanding as well. So that's the belief. And then maybe a third appeal. This case is never going to go away. It is possible that that could be a third appeal, that's right. But I think that is the posture. And if the court should reverse the relief, then it would be remanded for proceeding on damages, which is the posture where it was. It would be a retrial on liability. Why would you go to damages? Well, I'm saying if this court reversed what the district court did and sent us back to the posture where we were before the Rule 60 events happened, we were about to have a damages trial. So we would be back there because this court would reverse the district court's order vacating the Fifth Circuit judgment. So the Fifth Circuit judgment would be in place, and then we would be back to damages. Whereas if this court affirms what the district court did, then in that event we would need to once again retry the convalescence issues as to liability because that's where we were. The Fifth Circuit held that under the convalescence provision, result staffing was liable. And now that's been vacated by the district court for the reasons we've discussed. So if that remains vacated after this proceeding, then we would need to have a trial as to the issues on convalescence to be determined. And then it potentially could be a third appeal. How much is sought in this case? I'm just curious. I would think he'd be able to find other work. Wasn't it a day labor position? He was a day laborer. Day labor, you can usually find that. We were in the middle of actually attempting to determine that in preparing for the damages trial. I think it's fair to say that the parties have very different views of the amounts that are at issue here. We believe that the amount at issue is quite modest. In fact, because he was—it's probably incorrect to call him a day laborer. He was actually hired as a manager for the result staffing business. So he was not a minimum wage employee. However, he made about $700 a week. So the amount of money at issue here, even if results is liable and has to pay a judgment, we believe that the amount of money at issue here is relatively modest. Mr. Hernandez has a very different idea of the amount at issue. He believes he's, for various reasons, he's entitled to front pay and back pay and attorney's fees. So his number is quite a bit larger than what result staffing believes is truly at issue in this case. Your Honor, before I close, I wanted to say the Rozier case talks a bit about the fraud upon the court standard, which is a much higher bar that would apply after a year has elapsed. It talks about how once you get further from judgment, finality is really important. And Rozier says fraud upon the court is such a high bar that in order to pass that bar, you would need to show an unconscionable plan or scheme to defraud the court. We believe that even though fraud on the court is not the standard applicable here, we're within a year so we're dealing with Rule 63, we actually believe that we would meet the unconscionable plan or scheme bar even if we were further down the road and we were applying fraud on the court. The district court actually used the phrase unconscionable plan or scheme. Well, they do have the argument, which has been well covered today, about the release and about how you could have gotten the records. And you've acknowledged that with the benefit of hindsight that probably would have been done. So given that they had some reason, I don't think it's a frivolous argument, maybe a winner or a loser, but they had some reason to think that the release was enough, it's hard for me to see how it quite reaches the level of fraud on the court. I understand, Your Honor, and I do think it would be a closer question because, as I said, that fraud on the court is a higher bar certainly than the Rule 63 bar. However, our position and the position adopted, we believe, by the district court was that because of the underlying deception and dishonesty of Mr. Hernandez throughout the case in giving false testimony and because the district court having the opportunity to gauge the credibility of the witnesses at a live evidentiary hearing where all these people testified, including the plaintiffs, he found them to be completely uncredible and lacking in any measure of honesty. So that would be the basis for our approach, and we think the basis for the district court's approach there. But I do acknowledge that it's a higher bar and it would be a much closer call. So if the plaintiff was lying and if his counsel was going along with the lies, persisting the lies, wouldn't that be fraud on the court to the district judge? It very well could be, yes, Your Honor. Why wouldn't it be? Well, I'm in agreement with you. I'm recognizing the argument that Judge Smith raises, but I'm in agreement with you. I'm with the Abramson trial court which said this kind of looks like suborning perjury if the party is lying and the counsel knows it and they go ahead with this anyway. That would be our position. If there are no further questions. All right. Thank you, Mr. Devine. Mr. Wray, you've saved time for a vote. You were trial counsel, Mr. Wray? Yes, Your Honor. Did McBride issue a rule to show cause as to whether you should be sanctioned for your behavior in this case? He's held that until after this appeal. After this appeal? Yes, Your Honor. All right. Thank you. I think something needs to be clarified, particularly with the question that was asked regarding how this case would be dealt with, if it goes back to court. There were two grounds that this case was argued under, and if you look back, which I don't expect you to look in depth through the entire record, but you would find that going into even the first appeal, the primary argument made was that Mr. Hernandez reported within the proper timing provision under 4312E1A2. The secondary argument was the convalescence provision. When we came to appeal, the vast majority of the briefing in the first appeal related to the first provision. I believe that the position taken by the opposing counsel on that position was no way that that could pass muster. However, the court chose, decided that they did not have to review it because they found the convalescence provision was acceptable. So, of course, opposing counsel would prefer, if this case goes back, that they only look at the convalescence provision, where they now think they have a stronger foundation. But Mr. Hernandez, I think, has a very strong position on the timing provision, and I won't go into all the details, but certainly, if this case goes back, I believe it needs to be retried in its entirety, not merely as to the convalescence provision, because the appellate court never addressed that issue. And I guess that's not really before us. I was just, when I asked the question, I was just trying to be sure we understood the procedural posture, but it seems to me we would either affirm or reverse the order that Judge McBride has already entered and not go into. I appreciate your explaining all that to us, but I don't know what's up to us. And the other part of that is, though, that this is why the medical was never a big issue, particularly these medical records were never made into a big issue, because that wasn't the primary argument that the trial counsel were having at the time. We were concerned primarily, I was concerned at least, perhaps out of my inexperience, with the argument on the timing provision. The convalescence provision was a completely secondary argument, which is why we didn't get the medical records earlier. It was not to deceive the court or anyone else. When I got the records, I really don't have a great memory of it, of even looking at the records, but they said that he was treated for back pain. They supported the position that he was treated for back pain. The fact that there was another diagnosis, another treatment for a headache, again, the standard that I believe that we're looking at here is a de novo review of law on an interlocutory appeal and not a discretionary review, of course. But I think it's just important to note in context that that was the case. And I should also note, just in the point of that context, is that we asked for a continuance for more time for discovery. Opposing counsel did not oppose that continuance, but they did not agree. They felt that they were fully prepared for the case, which is why they didn't agree with the continuance. This was not a matter of the medical release was fully provided. The court has concluded that we had some scheme to defraud. If that were the case, when opposing counsel came into my office and asked for a copy of the medical records, do you have these records in your file? I was pretty angry because of the way that it went, if you read through the deposition. But I went and I got the records and said, yes, here are the records. This was not some scheme. The opposing counsel was a very seasoned trial lawyer, a partner at a large firm specializing in employment law, handled numerous federal litigation trials, had an associate. There was a general counsel working on the case. The fact that these folks looked at a one-page, handwritten doctor's release note and were to think that this was the entirety of a hospital record is beyond belief. In my conversations... She said you gave him some other records. Well, there were other records from other treatments, but this was the only record from that day, and under that specific question this was the only record provided. And I had conversations with the associate counsel about the medical release because they wanted these records. The only other thing I'd say is that Williams v. Thaler, in that case, the court specifically looked at a discovery violation and determined that because Mr. Williams had equal access to the records, that the violation didn't merit a reversal under 623. Thank you, Your Honor. All right. Thank you, Mr. Wray. Your case is under submission.